UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| CHANSAMOUT NIRANDONE,<br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFO SOL'S INC.,<br>EQUIFAX INFO SRVS. INC.,<br>TRANSUNION LLC, COCONUT<br>CREEK AUTOMOTIVE,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 24-cv-488-MRD-LDA<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

Melissa R. DuBose, United States District Judge.

The question before this Court is whether it has personal jurisdiction over Coconut Creek Automotive ("CCA"), a limited liability company organized under the laws of Florida and operating only in Florida, based on a car sale where Rhode Island Plaintiff Chansamout Nirandone ("Nirandone") was an unwitting cosigner to a car loan. This question leads the Court to balance the challenges that victims of identity fraud may face in holding people accountable for harm caused with the principles of personal jurisdiction outlined by the Supreme Court. Relying primarily on *Walden v. Fiore*, 571 U.S. 277 (2014), the Court finds that it cannot exercise personal jurisdiction over CCA. Therefore, CCA's Motion to Dismiss (ECF No. 37) the First Amended Complaint ("FAC") (ECF No. 31) is GRANTED.

I.  BACKGROUND

Nirandone was the victim of identity theft in November and December 2022. FAC at ¶ 56-57. In 2019, Nirandone purchased an automobile from her sister's boyfriend, Christopher Robinson, who was then working in the finance department at CCA. *Id.* ¶ 47. Using the personal identifying information that he garnered from that transaction, Robinson went on to covertly name Nirandone as a cosigner on a personal car loan in 2022. *Id.* ¶¶ 47-49, 63. Nirandone was unaware of this unauthorized use until March 18, 2023, when she received a call "from Genesis Auto Finance informing her that the payment for her Genesis account was late." *Id.* ¶ 50. The representative informed Nirandone that "she had a loan in her name and in Robinson's name." *Id.* ¶ 52. Confused, she attempted to speak with Robinson, but she was unable to reach him. *Id.* ¶ 53.

Nirandone contacted the police, and after investigating, they informed her that "CCA provided [her sister's boyfriend] with a copy of a credit application, and that [he] later brought back that credit application, completed with [Nirandone's] personal identifying information and an old copy of [Nirandone's] driver's license." *Id.* ¶¶ 56-62. The police confirmed that the CCA salesperson never spoke to or met with Nirandone, but nevertheless the dealership approved the "car loan application bearing [Nirandone's] signature as a co-signer." *Id.* ¶ 65. It approved the application after pulling her credit report in both November 2022 and December 2022. *Id.* ¶¶ 74, 81, 85.

2

Nirandone disputed the credit inquiries with all three credit reporting agencies – Equifax, Experian, and Transunion (collectively "CRAs") – but only Transunion removed the inquiries from her report. *Id.* ¶¶ 106-07, 111. This ultimately led to Nirandone filing suit against CCA and the CRAs alleging violations of the Fair Credit Reporting Act ("FCRA") and negligence. CCA has moved the Court to dismiss this suit for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Def.'s Mot. To Dismiss, ECF No. 26.

## II.   APPLICABLE STANDARD

"When challenged, the plaintiff must show that the Court can exercise personal jurisdiction over an out-of-state defendant." *Fed. Ins. Co. v. J. Gallant Elec. Servs., Inc.*, No. 1:22-CV-00123-MSM-LDA, 2024 WL 4953519, at *1 (citing *Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 51 (1st Cir. 2020)). And when a party challenges personal jurisdiction through a Rule 12(b)(2) motion and the Court has not held an evidentiary hearing, it applies the "prima facie standard." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 121 (1st Cir. 2022); *see Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007) (referring to this method as the "prima facie evidentiary standard"). Under this standard, the Court "'acts not as a factfinder, but as a data collector' in determining 'whether the plaintiff has proffered facts that, if credited,

would support all findings essential to personal jurisdiction.'" *Fed. Ins. Co.*, 2024 WL 4953519, at *1 (quoting *Chen*, 956 F.3d at 51 (cleaned up)).

### III.  DISCUSSION

To satisfy the prima facie standard, the Court must determine that CCA's "contacts with the state satisfy both the state's long-arm statute as well as the Due Process Clause of the Fourteenth Amendment." *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 258 (1st Cir. 2022); *see also Narcisi v. Turtleboy Digital Mktg., LLC*, No. 1:19-CV-00329-MSM-PAS, 2020 WL 5258491, at *2 (D.R.I. Sept. 3, 2020) (noting that "[f]or an out-of-state defendant to be subject to a court's jurisdiction in the forum state, the state's "long-arm" statute must be satisfied").  Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, is "coextensive" with the Due Process Clause, meaning the constitutional analysis controls. *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8-9 (1st Cir. 2009).  To satisfy the constitutional standard, the defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  "As long as due process concerns are satisfied, a federal court 'may exercise either general or specific jurisdiction over a defendant.'" *Chen*, 956 F.3d at 55 (quoting *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 35 (1st Cir. 2016)).

Nirandone and CCA confine their analyses to specific jurisdiction because they agree that general jurisdiction does not apply.  Def's Mot. to Dismiss at 5; Pl.'s Opp.

4

to Mot. to Dismiss at 9, ECF No. 43. There are three criteria for establishing specific jurisdiction over a defendant: relatedness, purposeful availment, and reasonableness. *Motus,* 23 F.4th at 122. "First, the plaintiff's claim must directly arise from or relate to the defendant's activities in the forum." *Chen*, 956 F.3d at 59. The Supreme Court has explained that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Second, the defendant's forum-state contacts must 'represent a purposeful availment of the privilege of conducting activities in that state.'" *Id.* (quoting *Scottsdale Cap. Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018)). Finally, "the exercise of specific jurisdiction in the forum must be reasonable under the circumstances." *Id.*

### A. Relatedness

Beginning with the relatedness factor, the First Circuit has described this standard as a "flexible, relaxed standard." *Pritzker v. Yari*, 42 F.3d 53, 61 (1st Cir. 1994). To satisfy this prong "[the plaintiff] must show a nexus between its claims and [the defendant's] forum-based activities." *Narcisi*, 2020 WL 5258491, at *3 (quoting *A Corp. v. All American Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016)). "The relatedness prong ensures fundamental fairness by protecting a defendant from being hauled into an out-of-state forum based on a single contact with that forum that is wholly unrelated to the suit at issue." *Id.* (quoting *U.S. v. Swiss Am. Bank*, 274 F.3d 610, 623 (1st Cir. 2001)). The Supreme Court has said that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's

5

conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285-86 (citing *Burger King Corp.*, 471 U.S. at 478). "[A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286 (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

These principles require the Court to analyze CCA's connection to the forum state – Rhode Island – and not its connection directly to Nirandone. *See id.* at 285-86. In other words, does CCA's conduct establish "minimum contacts" with Rhode Island? *Int'l Shoe Co.*, 326 U.S. at 316. In support of answering that question in the affirmative, Nirandone essentially argues:

> To be clear: **[Nirandone] did not seek out** CCA; CCA sought to benefit from the sale of a motor vehicle to a consumer that CCA knew or reasonably should have known resided in the state of Rhode Island . . . CCA **sought out** [Nirandone's] personal credit information. Stated another way: but for CCA's reaching into Rhode Island to secure details about [Nirandone's] credit history and other sensitive, personal information, [Nirandone's] claim against CCA **would not exist**.

Pl. Opp. at 11, ECF No. 43. CCA, on the other hand, argues that "[Nirandone] has alleged **nothing** to connect [CCA] to Rhode Island beyond its purported knowledge of [her] residence, and [her] purported damages incurred there." Def.'s Reply at 5, ECF No. 45.

While the Court agrees that it was, to put it mildly, CCA's inattention to detail that led to Nirandone being in this situation, it cannot ignore the Supreme Court's

6

pronouncement in *Walden* that "[Nirandone] cannot be the only link between [CCA] and the forum." 571 U.S. at 285. After the curtain of sympathy for Nirandone is pulled back, it becomes clear that CCA has no connection – or at least Nirandone has not provided any indication of a connection – with Rhode Island, separate and apart from knowing that Nirandone had a Rhode Island address on her credit report.

Any argument that CCA knew that any harm would be experienced in Rhode Island is also insufficient to establish personal jurisdiction. The Supreme Court has instructed that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290. The *Walden* decision consistently reminds the reader that the focus must be on the defendant's connection to the forum and not the defendant's connection to the plaintiff. This makes sense since "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant – not the convenience of plaintiffs or third parties." *Id.* at 284 (citing *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)).

Here, it cannot be said that CCA engaged in any conduct that connected it to Rhode Island in a meaningful way as all it did was obtain a credit report for someone and that report contained a Rhode Island address. Nirandone is clearly the only link between CCA and its contact with the forum state, and this Court understands the Supreme Court to be cautioning against using this precise kind of link to determine a defendant is properly subject to the personal jurisdiction of a forum state. *See id.* at 285-86.

7

Finding that *Walden* is applicable to these facts, the Court cannot ignore CCA's argument that Nirandone has failed to cite to any post-*Walden* cases that would shift the inquiry to a defendant's connection to a plaintiff rather than their "substantial connection with the forum state." *Id.*; Def's Reply at 4. Applying the "prima facie evidentiary standard" and "acting as a data collector," the Court finds "that [CCA's] suit-related conduct" fails to create a substantial connection with Rhode Island such that it cannot exercise personal jurisdiction over CCA in this suit. *Fed. Ins. Co.*, 2024 WL 4953519, at *1; *Walden*, 571 U.S. at 284.

B.   Purposeful Availment/Direction

While the Court's analysis need not proceed any further, the Court will discuss purposeful availment in light of the First Circuit's acknowledgement of the "natural blurring of the relatedness and purposeful availment inquiries in cases in which the alleged facts are less tangible than physical presence." *Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999). Nirandone spends a considerable amount of time distinguishing between purposeful availment and purposeful direction and arguing that personal jurisdiction can be established under the purposeful direction test. *See* Pl. Opp. at 11-16. But to do so would ignore the fact that the First Circuit requires the Court to apply a purposeful availment analysis. "The purposeful availment test focuses on the defendant's intentionality and is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." *Cossaboon*

8

*v. Maine Med. Ctr.*, 600 F.3d 25, 32 (1st. Cir. 2010) (internal quotation marks and citation omitted).

The allegations in this case do not support that CCA directed its activity towards the forum state – Rhode Island – nor does it support that that CCA received a benefit such that it should have expected to be subject to jurisdiction in Rhode Island. This Court is not persuaded that merely knowing Nirandone had a Rhode Island address on her credit report is enough to satisfy this prong of the analysis. Even though CCA benefitted from a sale, this benefit did not flow from any relationship with Rhode Island and "there is not so much as a hint that [CCA] benefitted in any way from the protections of [Rhode Island] law in [obtaining the credit report]." *Phillips Exeter Acad.*, 196 F.3d at 292.

As Judge Selya states in *Phillips Exeter Acad.*, "[t]he very exiguousness of these contacts suggests that [CCA] could not reasonably have foreseen its susceptibility to suit in a [Rhode Island Court]." *Id.* Therefore, there was no purposeful availment. And because the Court finds that the "relevant minimum contacts" do not exist, it need not analyze the reasonableness factor. *See Int'l Shoe Co.*, 326 U.S. at 316; *Narcisi*, 2020 WL 5258491, at *4.

IV.  **CONCLUSION**

For the reasons stated above, CCA's Motion to Dismiss (ECF No. 37) is GRANTED and Nirandone's First Amended Complaint (ECF No. 31) is DISMISSED as to this Defendant.

9

IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge


May 13, 2025